PAN AMERICAN PETROLEUM COR-
PORATION, Petitioner,

v.

FEDERAL POWER COMMISSION,
Respondent,

Pennsylvania Public Utility Commission
and the Commonwealth of Penn-
sylvania, Intervenors.

No. 7659.

United States Court of Appeals
Tenth Circuit.

Dec. 30, 1964.

Carroll L. Gilliam, Washington, D. C. (J. P. Hammond, Karl R. Goldsmith and Clifford O. Stone, Jr., Tulsa, Okl., William J. Grove, and O'Bryan, Grove, Paglin, Jaskiewicz, Sells, Gilliam & Putbrese, Washington, D. C., of counsel, were with him on the brief), for petitioner.

Howard E. Wahrenbrock, Sol. (Richard A. Solomon, Gen. Counsel, Robert L. Russell, Asst. Gen. Counsel, and Israel

Convisser, Washington, D. C., were with him on the brief), for respondent.

Before MURRAH, Chief Judge, and PHILLIPS and LEWIS, Circuit Judges.

LEWIS, Circuit Judge.

Pan American Petroleum Corporation seeks review under section 19(b) of the Natural Gas Act, 15 U.S.C. § 717r(b), of an order of the Federal Power Commission wherein the Commission assumed jurisdiction under section 7 of the Act over a transaction between Pan American and Tennessee Gas Transmission Company, the latter company being an interstate natural gas pipeline company. The dispositive question is whether the subject transaction constituted an assignment of oil and gas leases and was thus exempt under section 1(b) of the Act,[1] FPC v. Panhandle Eastern Pipeline Co., 337 U.S. 498, 69 S.Ct. 1251, 93 L.Ed. 1499, or a sale of gas for resale in interstate commerce and so was under the regulatory cognizance of the Commission, Phillips Petroleum Co. v. Wisconsin, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035.

During the years 1954 through 1959 Pan American acquired twelve leases upon what was initially undeveloped acreage in what is now known as the Bastian Bay Field in Plaquemines Parish, Louisiana. In December, 1955, an exploratory well was completed and thereafter a total of 32 wells were drilled upon six of the leases by Pan American either as wholly owned wells or in conjunction with others sharing operating rights. No wells were drilled upon the other six leases. Although the field was proven, Pan American made no sales for consumption, did not connect the wells to an interstate transmission pipeline or collection facilities and did not establish any permanent production units. Such quantities of gas as were produced were flared or consumed in the field.

On December 1, 1960, Pan American conveyed its interests to Tennessee for a stated price of $159,463,500 pursuant to a contract designated as a Lease Sale Agreement and consummated by an "Assignment and Conveyance." Of this price, Tennessee paid $9,427,104 at the time of transaction and obligated itself for seventeen further annual payments evidenced by promissory notes. The agreed price was based upon estimated reserves and provided for re-determination of the reserves upon the request of either party between 1969 and 1973, and for adjustment of the purchase price on the basis of such determination. The pricing formula was equated to 21¢ per Mcf. for the reserves attributable to the interest assigned. Tennessee agreed to develop and produce the leases and to negotiate contracts with royalty owners for the payment of royalties and reimbursement of Louisiana severance taxes. And the assignment was subject to the following reservations: (1) Pan American retained its rights in minerals other than natural gas, oil, and other petroleum liquids; (2) Pan American retained its rights in the leases below the bottom of the deepest presently-known productive horizons; (3) Pan American reserved as a production payment all proceeds received by Tennessee from the sale of oil produced on the leased acreage, such payments to terminate when 85 per cent of the recoverable reserves of oil have been produced; (4) Pan American reserved a similar production payment for proceeds received by Tennessee from the sale of separator liquids, with detailed provisions relating to the deduction of Tennessee's costs and expenses; and (5) Pan American retained the right to process all gas produced from the assigned leaseholds, including that attributable to certain outstanding royalty interests, for recovery of natural-gas liquids, agreeing to pay Tennessee for plant losses and use of gas as fuel.

Approval of the transaction was neither obtained nor sought from the Federal Power Commission. In 1961, Tennessee constructed a 12-inch connecting

1. Section 1(b) provides, *inter alia*, that the Commission's jurisdiction shall not reach "facilities used for * * * the production or gathering of natural gas." 15 U.S.C. § 717(b).

pipeline from the field to that company's main interstate transmission system. See Tennessee Gas Transmission Co. v. FPC, No. 7751, 10 Cir., this day decided.

 In substance, the contractual provisions of the Pan American-Tennessee agreement are not legally distinguishable from those considered by the Fifth Circuit recently in Marr v. FPC, 336 F.2d 320. There, as here, the thrust of the Commission's argument to support its claim of jurisdiction lies in its conclusion that the ultimate benefit that accrues to Tennessee is the acquisition of dry gas; that the legal effect of an instrument should be determined from the actuality of the transaction; that Congress intended that the Commission have all necessary powers to regulate the sale of gas in commerce effectively and that, absent jurisdiction of the subject and similar transactions, a regulatory gap exists which defeats the intended purposes of the Commission's creation. Such arguments are but a denial of the Supreme Court decision in Panhandle, supra, and can find no comfort in that court's later decision in Phillips, supra. The basic distinction between conveyances relating to simple acreage and facilities for production and gathering, over which the Commission has no jurisdiction, and the sale of gas in interstate commerce, over which the Commission does have jurisdiction, is not determined by nor dependent upon the contemplated but unrealized benefit to the parties. The conveyance must trigger the sale of gas in interstate commerce, not just shade the background. Saturn Oil & Gas Co. v. FPC, 10 Cir., 250 F.2d 61, 68, cert. denied, 355 U.S. 956, 78 S.Ct. 542, 2 L.Ed.2d 532. And the parties may deliberately avoid the jurisdiction of the Commission by remaining beyond the bounds of interstate commerce or within the exception to the Commission's regulatory powers in such commerce. Sunray Mid-Continent Oil Co. v. FPC, 10 Cir., 270 F.2d 404, 409.

 Our inquiry, then, must determine whether the Pan American transfers were leases within the compulsion of Panhandle. We conclude, as did the Fifth Circuit in Marr, that the subject conveyances were leases and consequently not within the Commission's jurisdiction under section 7 of the Act but were exempt under section 1(b). We are in complete accord with the views expressed by Judge Rives in his able opinion in Marr and find them to be equally applicable to the case at bar.

The orders are reversed and the cause remanded to the Commission for further proceedings consistent with the views here expressed.